The final case on calendar for argument today is Galicia v. Country Coach, et al. We do acknowledge that Country Coach has notified us of the filing of bankruptcy. All matters are stayed as to Country Coach, and so we will only address the issues pertaining to the parties that remain. Good morning, Your Honors. I'm James Costas. I'm here on behalf of the appellants to Galicia's. The only point I wanted to raise with the arguments is that on the issue of whether this was a shipment versus a delivery contract is that we, of course, relied heavily on the Gussie v. Gaiman case, and my colleagues have argued that it's distinguishable and really shouldn't be considered, and I respectfully disagree with their position. In the Gussie case, it was the second contract that was applicable, and that contract the parties signed had the exact provision that our contract has, which says that delivery shall occur at the time and place that the contract is signed, and in both instances that occurred at the dealership. In addition to that, the defendants in the Gussie case asked, as they did in this case, for the court to consider extrinsic evidence, and the district judge said that the contract itself is unambiguous. It says delivery will occur at the place and time of signing, and therefore we don't have to get into extrinsic evidence, but he went on to consider extrinsic evidence, and he said if you consider the extrinsic evidence, what we have here is an agreement by the parties for out-of-state delivery to take place so that no use or sales taxes will have to be paid, which is a perfectly lawful procedure if it's done right, and at best what you therefore have, the district court said, was an agreement in which the seller was required or authorized to deliver the vehicle out-of-state, but that's not enough. Counsel, the language says that the seller agrees to deliver the vehicle to the buyers on the date this contract is signed by the seller and the buyer. What does that language portend in your view? Expressly, I'm concerned about the language that says on the date this contract is signed, so delivery was supposed to take place on the date the contract was signed. What does that mean to you? What I believe that means is the title passed at the time and place that the contract was signed. That was where? At the dealership. That's my take on that language because Commercial Code 2401 talks about delivery and when title passes. Title, as you know, when title passes is typically significant because it allocates the risk of loss if there's physical damage to the product. So what does the term agree? Why didn't they say title passes on the date this contract is signed if that's what was meant by that? I can't answer that. It was a pre-printed form contract that was used. It appears to be a standard in the industry type contract. It appears to be the same one that was used in the Gussie case, so I can't answer that. But in the Gussie case, there's some language in that decision which is pretty telling. It says the district court, now this is the district court concluding, the contract required or authorized the dealer to transport the motorhome but did not require delivery at destination. That's what he said. Yes. Well, that isn't the case in this case. In fact, you, your client, not you, but your client required delivery in Arizona to get out of paying taxes. Correct, yes. So that is not dissimilar. We have the district court in that case suggesting in Gussie, right on the face of it, they do not require delivery at destination, only to transport. That is not the case here. In our case, they require delivery in Arizona to get out of paying the taxes. That's different. That's not the same case. In this case, we have, I mean, I'm asking you to respond. I'm trying to find, I mean, I read Gussie very carefully so I could see if it complied. I read these other cases. Here, they're required to deliver. They're required to deliver in order to benefit your client. It isn't they can take it over there if they want to. They have to give it there. And why? They had a contract at the time. It's a sales contract subject to the UCC. They can change it any time they want to. They did change it to give him a tax advantage to have it delivered in Arizona. And you say that makes no difference? Yes, I do say that makes no difference because the procedure that the State Board of Equalization has for avoiding the sales tax is perfectly lawful. There's nothing unlawful. Nothing. I'm not talking about whether the state law is lawful. I'm saying in order to apply with a normal state law, they changed the contract to make the delivery necessary outside the state, which then if I apply the law, it says where it was delivered. That's where we have the, that's where the contract comes together. Well, only if the contract requires the seller to deliver at a specific destination. Well, that's what it did in order to get out of paying the taxes. It was required to deliver in Arizona. Right, but because it doesn't require that it be delivered at a specific destination, that I submit that it falls under the 2401. So it had to say his house? Yes, it had to, I believe, have a specific location. And I think that that's what the, otherwise, because 2401 subdivision 1A says if the contract requires or authorizes the seller to deliver to a certain location, that's not enough. It has to be more specific than that. So that, I think that if you take the due bill, which has the language you're referring to, which says out-of-state delivery dash 3604, if you make that a part of the contract, that I still think. Well, 2401.2 is pretty straight. It says unless otherwise explicitly agreed, title passes with time and place. They complete the performance with reference to the fiscal delivery of the goods, even though a document of title is to be delivered at a different time and place. Now, I then read the due bill. It says there's not going to be a chance to take it there if they want to. They've got to deliver this to Arizona. Why did they do that? There's no question why they did that. They're authorized to do it. But it was to get out of paying the taxes. Now, at this point, to get out of paying the taxes, we still want California law to apply. But yet, if California law applied, the taxes would be due. Well, that's the same result that occurred in Gussie and the other states. Well, but Gussie, it isn't quite the same, because I read you what the district court said in Gussie. In Gussie, they don't say that. It says the contract required to transport, that's it, authorized or required, but did not require delivery. That's what he says. Well, again, I'd like to call your attention to quoting, I know the provision you just cited, but if you look at 2401 Subdivision 2A, it continues on with the citation. It says if the contract requires or authorizes the seller to send the goods to the buyer, but does not require him to deliver them at destination, title passes at the time and place of shipment. And then Sub B says if the contract requires delivery at destination, I think to me that requires a greater degree of specificity than what we have at this time. If I have anything that says this in this contract, do I have any case that says you have to get down to the specific residence to say specific destination? Do I have any case that says that? I have no case. I have only the statute. And you're arguing then statutory interpretation, and that I as a Ninth Circuit judge then should say that as long as one can get it out of the state for delivery, one doesn't have to pay the taxes, but one still gets to use California law on the interpretation of the contract. That's what you're saying? The reason I say yes is because California law has a procedure for how you take delivery out of state to avoid paying the taxes. It's not something that this is not nefarious. This is not something, some scheming behavior. The procedure to avoid the taxes, there's a procedure and a policy that you have to follow to be able to do that. So if by doing it the way they did it, they complied with and they followed California law, and so therefore I submit that there would be no inconsistency if they followed California law in terms of how they avoided the sales tax. There would be no inconsistency in applying California law to determine where title passed. Would that be inconsistent with delivery being in California as opposed to Arizona? I don't believe so under 2401A. Why did the district court abuse its discretion in denying the motion to amend? Because I think that the body of the complaint should control over labels. Well, let me ask you a question. Yes. What are the standards for the old D.J. that look at when he's trying to determine whether he should allow the motion to amend? What's the standard of review? When does he allow a motion to amend and when doesn't he? What's the standard? I think the principal standard is to look at, I think, prejudice to the opposing party. We're on the eve of trial. Yes. That isn't prejudice? Under these circumstances, I don't think it's prejudice because what we're talking about here are not new facts that are being brought into the equation. What we're talking about is a different legal theory. We pled this claim based on California law, which we believe was applicable. I'm submitting respectfully that when the district court decided no, Arizona law applies, then we should have been permitted to move forward on any theory of Arizona law that fit or that was applicable under the facts in the body of the complaint. When were you aware that the district court had determined that Arizona law applied? When were you apprised of that? I believe it was September of 2006. Okay. And so when did you seek leave to amend? Seek leave to amend was shortly after that. I can get the exact date out of there. When was the trial? The trial, I believe, was August of 2007, ultimately. Well, I don't want to argue with that. But you're right. That's not as I see them. No, but, Your Honor, that's ultimately, you're right. I understand the point you're trying to make. I think the trial was, at the time the judge ruled on the summary judgment motion, there was a trial pending. I mean, it was, I don't know the exact date, but it was coming up. It ultimately was continued. But you knew that was an issue, I mean, that Arizona law might be determined to be the governing law. That was not a surprise. I did when I got the summary judgment motion, yes, Your Honor. My, I'd ask one other question. On what basis do you appeal the summary judgment to Caterpillar? That the, since there were no interim rulings, that the judgment as to them did not become final until the final judgment was entered. Well, but what was the, what is the basis in your brief as to why the district court should not have given judgment to Caterpillar? My worry is that the only thing in your brief about that is that the district court made an improper decision about whether your failure to answer the request for admission was appropriate. And yet there was one other part that the court ruled upon, and that was you couldn't prove your warranty claim in any event, and yet I didn't see that in your brief. I think that the basis of it is that the request for admissions that were relied on in the motion went to the heart of the case. No, the request for admissions is a different issue. The other issue is whether or not you had evidence that you had met the statutory requirements for Caterpillar, whether or not you had taken the, whether your clients had taken the motor home to authorize dealers on more than one occasion to give Caterpillar the opportunity to try to rectify any defects. That's a separate issue than the request for admission. So was there anything in the record that would raise a material question of fact on that point? I would have to look at the request. I believe the request didn't cover that. Not the request for admissions. Separate and apart from the request for admissions. I understand where you're going. I understand your point. It's just I thought the request for admissions covered that subject. They asked us to admit that you never took it to an authorized dealer. You never, you didn't take it more than the requisite number of times. So I can't answer that, your question. All right. All right. Do you want to say that there remain no time for a vote? Yes. May it please the Court, Douglas Caudill again appearing before the Court, this time on behalf of Caterpillar. Mr. Costas really didn't address very much either in his brief or this morning on oral argument as to Caterpillar. So my main purpose here is to answer any questions that the Court may have. But I note that both Judge Mintz and Judge Rawlinson, that you indicated the second half of the judgment was not addressed in any of the briefs and we would still maintain that that would be waived because that would be an alternative. Is that the only issue that Caterpillar has on appeal? Is that the only issue that? No. What are the other issues? I'm just trying to make sure that we address the issues that are not germane to country coach. So what are the issues that Caterpillar asserts? Well, Caterpillar asserts that the judgment should be affirmed first because they waived the alternative basis stated in the district court's judgment. Second, that on the merits there is no evidence to show or to refute Caterpillar's evidence regarding the failure to submit the product on more than one occasion and it was cured, and so that's a Sylvia case. Well, if they waived that, then you win on that anyway, right? That's true. That's just kind of a backup. The third is that the district court did not abuse its discretion in not overturning the RFAs. And the fourth would be a tag-along with the remaining defendant, McMahons, on the issue that Judge Smith was. The delivery issue. Correct. Okay. We understand your position. Thank you. Thank you. Good morning. If it pleases the Court, Adam Abai, appearing for McMahons RV. Just as an initial housekeeping matter, as the Court noted, Country Coach is currently in bankruptcy proceedings. Up to this point, McMahons was being indemnified and defended by Country Coach. This case has now fallen back on McMahons to appear here today. As I see it, the only issue facing McMahons is whether or not the district court properly granted summary judgment on the Song-Beverly cause of action. And the motion to amend. And the motion to amend. Yes, Your Honor. With regards to the issue of whether or not the district court erred in ruling on the summary judgment motion, I would point out, number one, that the plaintiff in the case below never brought to the district court's attention or never argued the shipment versus delivery distinction. He only argued the vehicle code, Section 5901, which the district court analyzed in detail and disposed of. Assuming this Court reviews the summary judgment decision de novo, under either set of facts, the outcome, I believe, is the same because we have sufficient evidence to show that delivery was intended to take place out of state, as Your Honor pointed out. We have the due bill. We have the tax forms where the plaintiff swore under penalty of perjury that the vehicle was being delivered out of state. And we have the actual fact that delivery did occur out of state. And prior to delivery, the plaintiffs were not in possession of the vehicle. What do you have to say about a specific address required? I mean, the statute talks about a specific destination. And he's saying that specific destination means more than Arizona. You've got to say the address. I don't believe that a specific address is needed. I believe that I'm looking at the statute right now in front of me. Perhaps it's a bit vague and ambiguous what the term destination means. However, in this case, we know that the destination was Arizona, which means that it was out of state, which means that under established California law, Song Beverly does not apply. With regards to amending the complaint, I believe that the district court properly ruled on that by denying the motion on the eve of trial. I believe that undue prejudice would have been imposed upon the mans and country coach to defend new causes of action, new allegations under entirely a new body of law. What about opposing counsel's observation that the district court did not rule that Arizona law applied until shortly before the leave to amend? And would it be an abuse of discretion for the district court to deny the leave to amend when the district court itself only made the ruling shortly before the motion? I believe that all of the issues were known to all of the parties at that time. I don't think the district court abused its discretion in denying the motion on the eve of trial, as the facts were at that time. I believe the decision was correct that leave to amend should not have been granted at that time. That's my understanding, and you can correct me. Maybe you weren't there, so I don't know. But didn't also country coach and McMahon allege that they would have to take other depositions in order to do that, to be prepared? I would imagine that to be the case. You weren't there. I wasn't there. There's a comment in one of the briefs saying that the risk of loss between the time that the sale documents were entered and the time of delivery in Herrenberg was on McMahon. Was there anything to support that? Is there any evidence that that was the case or anything in the record? Well, I believe the documents speak for themselves insofar as, well, and the facts as well. The plaintiffs didn't take delivery of the vehicle at the dealership, so although the contracts were signed and the dealer went about securing financing for the transaction, the vehicle remained at the dealership and the risk of loss remained with the dealer. It wasn't until the vehicle was transferred. And that's just a conclusion, or is that specified somewhere? I don't know that it was specified in the motion for summary judgment. I don't have those particular documents with me. I just know from my experience representing dealers that that's the standard procedure. Counsel, may I ask you under the Magnuson Moss claim, the district court determined that refund damages were not available, right? I believe so. Decision of acceptance. Does that apply to your client? No, it does not, Your Honor. Okay. My client is only affected by the implied warranty of merchantability. Okay. And so the implied warranty of merchantability, was that an issue in the district court? It was an issue under the auspices of the Song-Beverly Consumer Warrant. Oh, so if the Song-Beverly goes away, then you have no liability. Correct. So that was country coach would be the refund. Okay. All right. Thank you. I'll submit with that if there are no further questions. All right. Thank you, counsel. Thank you to both counsel. Rebuttal? Did you want to? Did you want to say something else? No, I'm sorry. I jumped the gun. Oh, you're ready to leave. All right. Rebuttal. Thank you. I wanted to call the court's attention to the excerpts, volume two, pages 343, 345. And those are the requests for admissions. And I would respectfully submit that in light of the requests 5, 6, 7, 8, 20, 21, and 22, I was precluded from presenting any evidence in opposition to the summary judgment motion regarding whether there was a breach of the warranty. And so I think when the court, I don't think there was an independent basis for granting the motion. I think when the court's talking about that. Are you suggesting that when I read the district court's record, there wasn't an independent basis? I mean, I read his record. I thought it was pretty independent. He said it doesn't matter. Well, what I'm suggesting is in light of the requests for admissions that I just cited to you that were deemed admitted, I was precluded from addressing. In other words, I could not have put on evidence to contradict these requests for admissions and these requests for admissions that I've just cited to you address the point that the district judge was making. I guess that's the point I was trying to make is that if we didn't oppose it, it's because I believe we were precluded from doing so by the cited requests having automatically deemed admitted. I couldn't present contrary evidence. I guess that's the point I was trying to make. All right. Thank you, counsel. Thank you to both counsels. The case is submitted for a decision by the court. That completes our calendar for today. We are in recess until 9 o'clock a.m. tomorrow morning. All right. Court stands in recess until 9 o'clock tomorrow morning.
judges: Canby, Rawlinson, Smith N. R.